UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL W. AHEARN,
                Plaintiff,

        v.                                            Civil Action No.  05-11985-DPW

JOHN E. POTTER, UNITED STATES
POSTMASTER GENERAL,
                Defendant.

## MEMORANDUM AND ORDER

WOODLOCK, D.J.

For the reasons stated below: (1) Plaintiff's request to waive the filing fee (contained in the Letter-Complaint) is denied without prejudice.  Within thirty-five (35) days of the date of this Memorandum and Order, Plaintiff either will pay the $250.00 filing fee, or file a completed Application to Proceed Without Prepayment of Fees and Affidavit; (2) Within thirty-five (35) days of the date of this Memorandum and Order, Plaintiff shall show cause why this action should not be dismissed, or  file an Amended Complaint which cures the deficiencies under Fed. R. Civ. P. 8(a) as set forth herein; (3) Within thirty-five (35) days of the date of this Memorandum and Order, Plaintiff shall show cause why this action should not be dismissed as frivolous; and (4) Plaintiff's request for appointed counsel is denied without prejudice.

## FACTS

On September 26, 2005, Plaintiff Michael Ahearn, an employee of the United States Postal Service in Lowell, MA, filed his self-prepared Letter-Complaint against John E. Potter, Postmaster General, seeking authorization to file a civil action, requesting a waiver of all costs, and the appointment of counsel.  The Letter-Complaint was opened by the Clerk's Office as a civil action, and randomly assigned as Civil Action 05-11985-DPW.

While the Letter-Complaint is not entirely coherent or organized, Plaintiff states that his claims are for "harassment, age discrimination, violation of privacy, the union failing to file and follow through with [his] grievances, working in a hostile environment, and not receiving fair and appropriate resolutions for [his] attempts to resolve these issues." Letter-Complaint at 1.

The Letter-Complaint also lists the names of several of Plaintiff's co-workers at the Lowell Post Office, alleging that they participated in harassment and discrimination against him. Among those listed are co-workers Susan Brennan, Bill Brooks, Donna Diago Golden, Lenny Barros, Joe, Kenny, Michaelson, Walter O'Neil, Mike, Dan Landon, Gene Bedard, Gail Hall, Warren McQuade, and Jim Nutter.  See Letter-Complaint, generally.  Plaintiff alleges that he has several medical and/or psychological conditions that have been caused by the harassment.  Id. He further alleges that there have been others who have suffered from stress and/or harassment-related injuries resulting from employment within the Lowell Post Office.[1]  Id. at 1, 5.  In addition, Plaintiff makes vague references concerning the efforts of 83 postal employees who petitioned the Union for a class-action suit.[2]  Id. at 2.

Plaintiff's Letter Complaint also makes vague references to his attempts to exhaust administratively his claims, although he fails to provide any specifics in this regard, nor does he provide any written documentation concerning these attempts.  He does, however, allude to his

---

[1] In part, Ahearn states, "...A girl, Jane, shot herself on the Lowell Boulevard.  They said she had problems with her boyfriend.  I feel it was caused by stress at the Post Office...There was a clerk on the other side who hung himself.  They forced another guy back to work or he was going to lose his job.  He was out because of stress.  He was back to work about a month when he died." Id. at 5.

[2] Ahearn alleges that the Union had agreed to a class-action suit, but after a receiving notice of a possible threat from Ray Gallien, the Union refused to participate in the suit. Id. at 2.

Equal Employment Opportunity Commission ("EEOC") and United States Postal Service ("USPS") reference numbers, as well as an Administrative Judge's Decision of August 24, 2005, and the USPS's Notice of Final Appeal of August 29, 2005.  Id. at 1.   It appears that Plaintiff disputes the adverse decisions, based on the untimely filing of memoranda.  Id. at 2.   Plaintiff also alleges ineffectiveness of counsel in connection with the administrative grievance processes.[3]  Id. at 1, 5.  Specifically, Plaintiff alleges that no one has contacted any of the witnesses he had listed in his previous grievance procedures.  Id.

With respect to the substance of his harassment and discrimination claims, Plaintiff alleges that he began experiencing harassment and discrimination sometime around 1990-1991, subsequent to a Red Cross blood drive hosted by the Lowell Post Office.  Id. at 2.  He recounts the circumstances surrounding that blood drive, alleging that there had been a meeting after the blood drive, at which employees were told that there were some number of employees who became ill.  Id.   Plaintiff states that he was absent from work for a few days following the blood drive, and that when he returned, his co-workers had assumed that he was one of the employees whose illness was discussed at the meeting.  Id.   Plaintiff asserts that his absence was due, in fact, to injuries to his toe, which were caused by running up stairs along his route.  Id. However, Plaintiff later states that he was told by his counselor, Mr. Vivieros, that this injury may in fact have been stress-related.  Id. at 5.

Additionally, Plaintiff recounts his alleged harassment concerning the question whether

---

[3]Ahearn states, in part, "...I continuously told my lawyer that the information he was trying to submit was not accurate and he assured me that he would correct it later, but failed to do so."  Id. at 1.   He also states that his lawyer misrepresented his case as a mental disability case.  Id..

the Plaintiff suffered from AIDS.  He alleges that his co-worker, Lenny Barros, had thought that the previous boss, "Joe," had died of AIDS.  Id. at 2.  Plaintiff states that he used to take Joe out for dinner, and that there was an instance where Joe may or may not have put something in Plaintiff's drink.  Plaintiff alleges that Lenny Barros assumed that Plaintiff also had AIDS, and that he began telling co-workers that Plaintiff had AIDS.  Id. at 2.  After Lenny Barros suggested this, Plaintiff became concerned about his health, and wished to have an AIDS test.  Id. at 3.  However, Plaintiff had switched health insurance policies, and had to wait for approximately three (3) months to have the medical test.  Id.  During this time, Plaintiff claims that he continued to be "harassed" by co-workers.  Id.  The harassment he alleges included teasing, making AIDS jokes, and suggesting that Plaintiff "get tested," etc.  Id. at 2, 3.

In particular, Plaintiff contends that, on group breaks, co-worker Walter O'Neil would sing "Where the Boys Are," in front of other people.[4]  Id. at 3.  Plaintiff also alleges that he had told Lenny Barros that he was going to confront two of his co-workers that were harassing him (Dan and Mike), but that Lenny Barros then thwarted his efforts by telling those two individuals about the intended confrontation.  Id. at 3.  Plaintiff also contends that another co-worker, Donna Diago, was interrupting him so frequently at work that he was unable to concentrate, which caused him to follow her around and yell at her.  Id. at 4.  As a result of this, Plaintiff was provided with a counselor, Russell Vivieros.  Id. at 4, 5.

Plaintiff contends that as a direct result of the alleged harassment and discrimination, he has suffered physical and emotional harm, including situational anxiety while at work, lack of

---

[4]Plaintiff avers that Gail, who had been told AIDS jokes by Dan, questioned him about sandwiches which he was carrying in his back pocket. Id. at 3, 4.  Plaintiff implies that the question was somehow derogatory to him.

ability to concentrate at work, sore throat, red gums, aching teeth, and waves of numbness.  Id. at 2, 3.  In addition, he complained that he constantly needed to eat, even though he was steadily losing weight in the course of a three (3) month time-span.  He also complained of needing to frequently urinate.  Id. at 3.  He claims also to have suffered chest pains, and soreness in his toe.  Id. at 5.  Because of all these symptoms, Plaintiff was worried that he had AIDS.  Id. at 3.  He also states that his head was constantly "running," and he suffered anxiety about the possibility of being ill.  Id. at 3, 4, 5.  In addition, Plaintiff states that this "running" of his mind continued beyond all diagnoses and even continued after the harassment had ceased.  Id. at 3, 5.

      Plaintiff avers that, about six months after the Red Cross blood drive, his wife heard him talking "crazy" in his sleep.  Id. at 4.  After that, Plaintiff's wife called his brother to "come get [Plaintiff's] guns."  Id.  Plaintiff then states that his brother did not take his guns, for fear that he would just become more aggravated.  Id.  Plaintiff states that he told his brother, over the phone, that he believed that people from work were taping phone calls between the two of them.  Id.  He also claims that he would tell things to his brother, and then "someone at work would walk by [him] and say something about it."[5]  Id.  A couple of days later, Plaintiff claims that "someone drove by and yelled out what I said," referring to the phone conversation.  Id.

      At some unspecified point, Plaintiff went to his physician, Dr. Saba, to get tested for AIDS, as well as to confirm suspicions that he had other physical ailments.  Id. at 4.  Dr. Saba assured him that he had nothing physically wrong with him.  Id. at 4.  Plaintiff also went to see counselor Russell Vivieros, as suggested by his supervisor.  Id. at 5.  After numerous visits,

---

    [5]Plaintiff's brother, in response to these allegations, told Plaintiff that he was getting paranoid.  Id. at 4.

"everything stopped." Id.  Plaintiff suggests that this may have been due to the death of a co-worker, who may have been one of the ill employees discussed at the meeting after the blood drive. Id.

Plaintiff states that he had tried to resolve his issues through grievances to the Union, the U.S. Merit Systems Protection Board, the National Labor Relations Board, the District Attorney, and the EEOC.  Id.  He does not indicate what type of relief he seeks, or whether he suffered any adverse consequences to his employment with the U.S. Postal Service.

Plaintiff did not pay the $250.00 filing fee, nor did he file an Application to Proceed Without Prepayment of Fees, or provide any financial information in support of his request for waiver of fees.  Within his Letter-Complaint, Plaintiff sought leave to file a Complaint, a waiver of all costs, and appointment of counsel.

## ANALYSIS

I. The Filing Fee

In his Letter-Complaint, Plaintiff asks this Court to "authorize the commencement of that action without payment of fees, costs, or security." Letter-Complaint at 1.  The request in this form is denied without prejudice.  A party bringing a civil action must either (1) pay the $250.00 filing fee when filing the complaint, or (2) file an Application to Proceed Without Prepayment of Fees.  See 28 U.S.C. §§ 1914(a) (filing fees), 1915 (proceedings *in forma pauperis*).  Because Plaintiff has failed to comply with these requirements, I will afford him additional time to either pay the $250.00 filing fee, or in the alternative, file a fully completed Application to Proceed Without Prepayment of Fees and Affidavit, disclosing his financial status, in order for this Court to make a determination whether he qualifies for *in forma pauperis* status.  The clerk is directed

to provide a blank Application form to Plaintiff, along with a copy of this Order.  Plaintiff must comply with these directives within thirty-five (35) days of the date of this Memorandum and Order, and failure to do so will result in dismissal of this action.

Additionally, if  Plaintiff complies with the above directives, he is also directed to demonstrate good cause, within that thirty-five (35) day period, why this action should not be dismissed for the reasons stated in this Memorandum and Order.

II.     The Court May Screen this Action

Because Plaintiff seeks to file his Letter-Complaint without prepayment of the filing fee, a summons has not issued in order to allow the Court to review Plaintiff's Complaint to determine if it satisfies the substantive requirements of the federal *in forma pauperis* statute.  See 28 U.S.C. § 1915.  Section 1915 of title 28 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).

*In forma pauperis* complaints may be dismissed *sua sponte* and without notice under Section 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).  A district court may also dismiss a complaint *sua sponte,* regardless of whether or not payment of the filing fee has been received, where the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption.  Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001) (citations omitted); cf., Bell v. Hood,

327 U.S. 678, 682-83 (946)(observing that dismissal for lack of subject-matter jurisdiction may result if the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or...is wholly insubstantial and frivolous."); Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993)(court could *sua sponte* dismiss complaint under standards for *in forma pauperis* actions even though plaintiff paid the filing fee).

The Court recognizes that *pro se* complaints must be liberally construed. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept., 209 F.3d 18, 23 (1st Cir. 2000).  However, even construing Plaintiff's Letter-Complaint generously, his claims are subject to dismissal under § 1915(e)(2), for the reasons stated below.

### III. Failure to Comply with Fed. R. Civ. P. 8(a)

Plaintiff's allegations set forth in Letter-Complaint, are not entirely coherent or lucid. The pleading is replete with non-sequiturs, making it difficult, if not virtually impossible, to decipher exactly what his claims are, and to determine whether he has set forth claims upon which relief can be granted.   Therefore, at this juncture, his Letter-Complaint does not comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st  Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), such that the defendant is afforded a "meaningful opportunity to mount a defense," Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st  Cir.

2004) (quoting <u>Rodríguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1172 (1st Cir. 1995)). "In a civil rights action ..., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." <u>Educadores PuertorriqueZos en Acción v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal ... minimal requirements are not tantamount to nonexistent requirements." <u>Id.</u> (quoting <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988)).

Here, as noted above, Plaintiff does state that his claims are for harassment, age discrimination, violation of privacy, and a hostile work environment. He also complains about the union's failure to file and pursue his grievances.

   1.   <u>Privacy Claims</u>

With respect to his privacy claims, Plaintiff fails to include any factual information which would set forth a cognizable claim for violation of privacy. He does not provide any details as to the individual(s) who allegedly violated his privacy, or when and where such actions occurred. Plaintiff's privacy claims appear to stem from his ideation that his phone was tapped and that other people are were aware of his conversations with his brother. He does not specify who allegedly tapped his phone or those persons who allegedly overheard the conversations.

Moreover, as discussed in more detail below, I find such assertions to be based on unreal scenarios, or factual allegations that are clearly baseless, warranting dismissal of this claim. <u>Denton v. Hernandez</u>, 504 U.S. at 32-33.

   2.   <u>Harassment Claims</u>

In contrast to his privacy claims, Plaintiff does provide specific allegations with respect

to incidents of harassment, and his assertion of a hostile work environment.[6]   Notwithstanding that Plaintiff can point to specific examples of his claims, Rule 8(a) problems are presented nevertheless with respect to those claims.  Plaintiff has indicated that the harassment problems began in 1990-1991, and then claims stress-related problems since May 2003.   However, he fails to identify specific dates, time, places, or participants.  Simply stated, while he provides the "what" type of information, he fails to set forth the factual details as to "who, when, where and why" which are also necessary to establish a cognizable cause of action.

Additionally, while the caption of his letter indicates that his claims are against John E. Potter, Postmaster General, he also makes allegations of wrongful actions of the union,[7] as well as others.  He therefore has not identified sufficiently who is a named defendant (or defendants), to this action, nor has he delineated the particular claims asserted against each person or entity mentioned in the Letter-Complaint.

### 3.   Age Discrimination Claims

Plaintiff also makes a claim for age discrimination, however, nowhere in his Letter-Complaint does he address how age was a factor in an adverse employment action.  While Plaintiff might be able to bring a claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., he has failed to provide sufficient facts to set forth any such

---

[6]Such claims, if pled properly, could come within the purview of Title VII of the Civil Rights Act of 1964, if they constitute sexual harassment.  See 42 U.S.C. § 2000e.  See also the Civil Service Reform Act of 1978, 5 U.S.C. § 2302 (prohibited conduct includes discrimination based on sexual orientation).

[7]Under the facts presented, it is unclear whether such assertions amount to a claim of breach of a collective bargaining agreement.

claim.  In order to set forth a claim, a plaintiff must allege disparate treatment based on age, and in order to establish a claim for disparate treatment, a plaintiff must show that age was a determining factor in the adverse employment action.  See Scott v. Peter, 2005 WL 1490976, *4 (S.D. Ohio, June 23, 2005).  Here, Plaintiff has provided no such details, and therefore those claims are also subject to dismissal.

In light of the above, Plaintiff's Letter-Complaint is insufficient to meet the minimum pleading requirements of Rule 8(a) and therefore his entire case is subject to dismissal.  Accordingly, this action shall be dismissed within thirty-five (35) days of the date of this Memorandum and Order, unless Plaintiff files either an Amended Complaint which cures the deficiencies, or show causes why this action should not be dismissed for the reasons stated herein.

IV.   Frivolous Allegations

As noted above, *in forma pauperis* complaints may be dismissed *sua sponte* and without notice under Section 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  See Denton, 504 U.S. 32-33.  Such cases may be deemed to be frivolous in nature.

Here, I am troubled by the various allegations set forth by the Plaintiff, which, taken as a whole, appear to demonstrate a paranoid or irrational perception of the world around him, which call into question whether this action is frivolous, as clearly factually baseless.  I note that Plaintiff even concedes that his wife and brother have stated he was "talking crazy" or was "paranoid" and that he was referred for mental health counseling.  He also states his mind was constantly "running" and he recounts what appears to have been an irrational or paranoid fear

that he suffered from AIDS.   Finally, he states that other people were listening into his conversations and then referring to them at a later point.  Again, such allegations lead to the conclusion that Plaintiff's is describing paranoid, delusional, or unreal scenarios.

While I will not dismiss this action *sua sponte* as wholly frivolous at this juncture, I will direct that Plaintiff show cause within thirty-five (35) days from the date of this Memorandum and Order, why this action should not be dismissed as factually frivolous, for the reasons stated above.  This show cause requirement is in addition to, and not in lieu of, the requirement contained in Part III  herein with respect to the Rule 8(a) deficiencies.

V.   Exhaustion of Administrative Remedies

Plaintiff fails to submit any information concerning the underlying administrative proceedings, to establish that he has met the precondition of exhaustion of administrative remedies before filing suit in this Court.  Plaintiff does allege that he has received the United States Postal Service's Final Appeal, and that he has sought resolution through his union, the Merit Systems Protection Board, the National Labor Relations Board, the District Attorney, and the EEOC.  However, while it appears that he may have exhausted his administrative remedies, it is impossible at this juncture for me to determine whether in fact he has done so, and whether he has filed this action in a timely manner.[8]

---

[8] Unlike a Title VII claim, a federal employee is not required to exhaust an ADEA claim. Rather, a federal employee "has the option of bypassing administrative remedies entirely and suing directly in the federal district court." Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005)(citing 29 U.S.C. § 633a(c); Rossiter v. Potter, 357 F.3d 26 (1st Cir. 2004).  A federal employee who wishes bypass the administrative route must notify the EEOC of the intent to sue within 180 days following the occurrence of the allegedly unlawful practice and then observe a thirty-day waiting period before filing suit.  Jorge, 404 F.3d at 561; 29 U.S.C. § 633a(d).  The EEOC is then required to notify the defendant of the employee's intent to sue. Id.

Accordingly, Plaintiff shall show cause within thirty-five (35) days of the date of this Memorandum and Order, why this action should not be dismissed for failure to exhaust administrative remedies.

VI.     Request for Appointment of Counsel

Under §1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).  However, a civil plaintiff lacks a constitutional right to free counsel.[9]  DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991) (citations omitted).  In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  Id.  To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  Id. at 24 (citations omitted).

In accordance with this standard, Plaintiff's request for counsel (contained in the Letter-Complaint) is denied without prejudice.  First, Plaintiff has not demonstrated that he is indigent and unable to afford retained counsel.  Second, even if Plaintiff demonstrated an inability to pay for counsel, this case fails to present the kind of exceptional circumstance warranting appointment of *pro bono* counsel, especially in view of the various deficiencies in Plaintiff's Complaint, as outlined in this Memorandum and Order.

---

[9]There is no authority for this court to pay for counsel appointed to civil litigants such as the Plaintiff.  Any appointment of counsel would therefore be contingent upon the availability of *pro bono* counsel to voluntarily accept an appointment. (Cf., 18 U.S.C. § 3006A, appointment of counsel in habeas petitions under 28 U.S.C. § 2241, § 2254 and motions under § 2255).

Accordingly, Plaintiff's request for appointment of counsel is denied.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's request to waive the filing fee (contained in the Letter-Complaint) is denied without prejudice. Within thirty-five (35) days of the date of this Memorandum and Order; Plaintiff either shall pay the $250.00 filing fee, or file a completed Application to Proceed Without Prepayment of Fees and Affidavit. The clerk shall provide a blank application form along with a copy of this Memorandum and Order;

2. Within thirty-five (35) days of the date of this Memorandum and Order, Plaintiff shall show cause why this action should not be dismissed, or he shall file an Amended Complaint which cures the deficiencies under Fed. R. Civ. P. 8(a) as set forth herein;

3. Within thirty-five (35) days of the date of this Memorandum and Order, Plaintiff shall show cause why this action should not be dismissed as frivolous; and

4. Plaintiff's request for appointment of counsel is denied.

SO ORDERED.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

DATED:12/23/05